**CCF INDUSTRIAL PARK, INC.**

v.

**HASTINGS INDUSTRIES, INC., et al.**

**Civ. A. No. 74–1737.**

United States District Court,
E. D. Pennsylvania.

March 25, 1975.

Patrick J. O'Connor, Philadelphia, Pa., for plaintiff.

R. Thomas McLaughlin, Joseph T. Bodell, Jr., Christopher C. Fallon, Jr., Albert Bricklin, Philadelphia, Pa., for defendants.

## MEMORANDUM

HUYETT, District Judge.

Plaintiff CCF Industrial Park, Inc. brings this products liability action to recover damages resulting from a fire and explosion in a building owned by plaintiff. Plaintiff alleges that the fire and explosion were caused by a heating system installed in the building. The heating unit itself was manufactured and sold to plaintiff by defendant Has- tings Industries, Inc.; the oil pump, which supplied the heater with oil, was manufactured and sold to plaintiff by defendant Peabody, Gordon-Piatt, Inc., (Peabody). Plaintiff asserts that de- fendant manufacturers are liable to it under theories of breach of warranty, negligence, and strict liability. The citi- zenship of these three parties is com- pletely diverse.

Pursuant to Fed.R.Civ.P. 14(a), de- fendant Peabody filed a third-party ac- tion for indemnification or contribution against C. Kaufman, Inc., on the ground that third-party defendant had negli- gently installed and serviced the oil pump that defendant third-party plain- tiff Peabody had sold to plaintiff. Sub- sequently, plaintiff filed a claim directly against third-party defendant alleging negligent installation. Third-party de- fendant moved to dismiss plaintiff's claim against it for lack of diversity, and, by our Order of March 18, 1975, we denied third-party defendant's motion. At the time of our Order, we advised counsel that we would shortly issue a memorandum since we recognize that in denying third-party defendant's mo- tion, we are taking what might be termed a "minority position."

Under Fed.R.Civ.P. 14(a), a plaintiff "may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. . . ." The parties do not dispute that plaintiff's claim against third- party defendant meets this test. Also undisputed is the lack of diversity between plaintiff and third-party de- fendant. The controversy arises over whether or not plaintiff can claim di- rectly against third-party defendant absent an independent jurisdictional base.[1]

The preponderance of courts who have considered the problem to date have re-

---

1. Fed.R.Civ.P. 14(a) is not itself jurisdic- tional. Fed.R.Civ.P. 82 reads in part:

These rules shall not be construed to ex- tend or limit the jurisdiction of the United States district courts . . ..

quired such an independent jurisdictional base,[2] and this fact is duly noted by Professor Moore and Professors Wright and Miller in their respective treatises.[3] The reasons most frequently given in support of requiring diversity between plaintiff and third-party defendant are, first, that a plaintiff may not do indirectly what he cannot do directly and, second, that such a requirement prevents a conspiracy between plaintiff and defendant to gain access to a federal forum under false pretenses.

■■ Because we believe that such an inflexible requirement interferes unnecessarily with a federal court's power to exercise ancillary jurisdiction in a proper case, we join the courts [4] which hold that the discretionary power of a federal court to exercise its ancillary jurisdiction extends to the claim of a plaintiff against a non-diverse third-party defendant. Although the Court of Appeals for the Third Circuit has not recently addressed the precise issue under discussion here, the Court's pronouncements in the last few years on the extent of federal ancillary jurisdiction have strongly encouraged its exercise. In Nelson v. Keefer, 451 F.2d 289, 291 (3d Cir. 1971), a personal injury, diversity action, the Court quoted the following language from its earlier opinion in Jacobson v. Atlantic City Hospital, 392 F.2d 149, 153 (3d Cir. 1968):

> [T]his court has taken the lead in recognizing diversity jurisdiction over an entire lawsuit in tort cases presenting closely related claims based, in principal part at least, on the same operative facts and normally litigated together, even though one of the claims, if litigated alone, would not satisfy a requirement of diversity jurisdiction.

Then in footnote 4 the Nelson court goes on to say:

> Whether we receive them under concepts of "pendent" or "ancillary" jurisdiction, this court has deemed the doctrine of United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), to extend to diversity cases where the "claims . . . 'derive from a common nucleus of operative fact,' particularly where 'considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding. . . .' "

451 F.2d at 291 n. 4 (citation omitted). In the Western District of Pennsylvania, Judge Gourley, then Chief Judge Gourley, permitted a plaintiff to claim directly against a non-diverse third-party defendant, explaining:

> It would seem to this member of the court that to deny pendent jurisdiction in a situation such as this would be to defeat the raison d'etre of ancillary jurisdiction. The essential purpose, of course, is to avoid multiplicity of suits and piecemeal litigation, and there is no sound reason that the court can see to require more exacting standards in this case than are applied in the many other ancillary proceedings where pendent jurisdiction is allowed without diversity of citizenship.

Buresch v. American LaFrance, 290 F. Supp. 265, 267 (W.D.Pa.1968). Finally, we note that while Professor Moore and

2. See, e. g., the following decisions by district courts in the Third Circuit: Joseph v. Chrysler Corp., 61 F.R.D. 347 (W.D.Pa. 1973); Mickelic v. United States Postal Service, 367 F.Supp. 1036 (W.D.Pa.1973); Ayoub v. Helm's Express, Inc., 300 F.Supp. 473 (W.D.Pa.1969); Heintz & Co. v. Provident Tradesmens Bank and Trust Company, 30 F.R.D. 171 (E.D.Pa.1962).

3. See 3 J. Moore, Federal Practice ¶ 14.-16[1] at p. 14–375 (2nd ed. 1974); 6

Wright & Miller, Federal Practice and Procedure: Civil § 1444 at p. 229 (1971).

4. See, e. g., Buresch v. American LaFrance, 290 F.Supp. 265, 267 (W.D.Pa.1968) (Gourley, Ch. J.); see also the Order of Ditter, J., filed February 3, 1975, in Acme Manufacturing Co. v. Powrmatic, Inc., and Honeywell, Inc., Civil Action No. 73–131, denying the motion of third-party defendant to dismiss plaintiff's claim against it for lack of diversity.

Professors Wright and Miller acknowledge in their treatises the existence of the "majority position," they also quarrel with it. Professor Moore urges that the question under consideration

> should not be a question of pure law posing the choice "either there is ancillary jurisdiction and the court must take it, or there is no ancillary jurisdiction, and the court cannot take it." Instead, since there is jurisdictional power to hear the whole case [for this power Professor Moore relies on United Mine Workers v. Gibbs, 383 U.S. 715, [86 S.Ct. 1130, 16 L.Ed.2d 218] (1966)], the question is one of trial court discretion whether to exercise that jurisdiction, considering all the factors of economy and convenience in the context of federalism. Once this redefinition takes place, the traditional reasons given for supporting a rule of flat prohibition do not necessarily disappear. Instead they become factors for the trial court to consider in exercising its discretion.

3 J. Moore, Federal Practice ¶ 14.27[1] at p. 14–570 (2nd ed. 1974). Thus Professor Moore would have the courts deal with the problem of collusion between plaintiff and defendant on a case by case basis. Professors Wright and Miller join Professor Moore in urging that courts approach flexibly the problem of a plaintiff's claim against a non-diverse third-party defendant. They point out that since a plaintiff cannot control the original joinder of the third party, exercising ancillary jurisdiction over plaintiff's claim against third-party defendant "would not encourage plaintiff to initiate actions in the hope that the third-party defendant would be impleaded." 6 Wright & Miller, Federal Practice and Procedure: Civil § 1444 at p. 231 (1971). We find these arguments persuasive.

Moreover, we find that the present action is a particularly appropriate one in which to achieve judicial economy through the exercise of ancillary jurisdiction. Here a purchaser claims it has been injured by a relatively complex product, a heating system, which allegedly exploded and burned. The purchaser sued the manufacturers of two different parts of the system. One of the manufacturers alleges, in a third-party action, that its product was not at fault but that the ultimate liability lies with the negligent installer of its product. The entire action has been proceeding in federal court, through discovery and other pretrial activities, for eight months now. There is no suggestion that plaintiff knew or could have known of the possible liability of third-party defendant when it filed suit. Most importantly, however, a decision at trial by the factfinder on the cause or causes of the fire should be a crucial, if not the crucial, step in resolving, in one trial, any liabilities of the various parties. Under these circumstances, we take ancillary jurisdiction over plaintiff's claim against third-party defendant.