CHRYSLER CORPORATION and Chrysler Motors Corporation, Plaintiffs,

v.

E. L. JONES DODGE, INC., a Pennsylvania Corporation, Defendant.

GENERAL MOTORS CORPORATION, Plaintiff,

v.

E. L. JONES DODGE, INC., a Pennsylvania Corporation, Defendant.

Civ. A. Nos. 76–870, 76–871.

United States District Court, W. D. Pennsylvania.

Oct. 21, 1976.

Thomas J. Reinstadtler, Egler & Reinstadtler, Pittsburgh, Pa., for Chrysler and Chrysler Motors.

Thomas A. Lazaroff, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for General Motors.

Robert G. Rose, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, Pa., H. Fred Mercer, Mercer, Mercer, Carlin & Scully, Pittsburgh, Pa., for defendants.

OPINION

SNYDER, District Judge.

## I. BACKGROUND

. Chrysler Corporation and Chrysler Motors Corporation in one action and General Motors Corporation in another action sought injunctions against E. L. Jones Dodge, Inc. prohibiting proceeding with the prosecution of their joinder in an action in trespass as filed in the Court of Common Pleas of Cambria County.

On January 27, 1972, Theodore C. Joseph was seriously injured when his 1972 Dodge Challenger collided with a bridge abutment on Route 56 Bypass in Richland Township, Cambria County, Pennsylvania. Joseph brought action in the United States District Court for the Western District of Pennsylvania, 61 F.R.D. 347 (C.A. 72–295 and 73–24, hereinafter federal actions) for personal injuries against Chrysler Corporation (manufacturer of the automobile) and General Motors Corporation (manufacturers of the power steering component). E. L. Jones Dodge, Inc. (hereinafter "Jones"), retailer and repairer of the vehicle, was joined as a third party defendant by General Motors for alleged negligence in the repair performed on the vehicle. Jones in turn joined Chrysler Motors Corporation as a fourth party defendant, alleging that either Chrysler or General Motors was solely liable to Joseph, or that Jones was entitled to indemnity or contribution. Joseph amended his complaint to assert a direct claim against Jones, which was dismissed for lack of complete diversity. There ensued 13 days of trial in the consolidated federal actions and the jury returned a special verdict answering only one of the interrogatories which was as follows:

"1. Was the Dodge Challenger car defective and unreasonably dangerous when it was sold by Chrysler Corporation to Chrysler Motors Corporation, and sold by Chrysler Motors Corporation to E. L. Jones Dodge, Inc. and sold by E. L. Jones Dodge, Inc., to Theodore C. Joseph on or about October 29, 1971?

Answer: No."

Thereafter, judgments against Jones and in favor of all the defendants were entered. The Court of Appeals affirmed the District Court's refusal to grant a new trial on April 21, 1975. *Joseph v. Chrysler Corporation*, 513 F.2d 626 (3d Cir. 1975). One year prior to the trial of the consolidated federal actions, Joseph commenced an action against Jones in the Court of Common Pleas of Cambria County where he resided. In his complaint to join General Motors as an additional defendant in the state action, Jones averred that General Motors was solely liable to the plaintiffs, or in the alternative that Jones was entitled to contribution or indemnity from General Motors. Jones also joined Chrysler Corporation and Chrysler Motors Corporation as additional defendants. After interposing a preliminary objection in the nature of a petition raising the pendency of the federal actions, General Motors in New Matter asserted the bar of the Federal Court judgment in its favor and thereafter filed a Motion for Summary Judgment predicated upon the Doctrine of Res Judicata and Collateral Estoppel. The Defendant Jones in its Reply to New Matter admitted the judgment in favor of General Motors in the federal actions and the averments of fact in General Motors' New Matter. Following briefing and oral argu-

ment, the Cambria County Court of Common Pleas denied the Motion for Summary Judgment by order without opinion. General Motors in accordance with Section 501 of the Appellate Jurisdiction Act of 1970, 17 P.S. § 211.501 (Supp.1976), petitioned the Court to certify the order to the Superior Court as a case involving a controlling issue of law which would materially advance the ultimate determination of the matter. The petition was denied without opinion or disclosed reason.

## II. DISCUSSION

General Motors in this proceeding states it is indisputably entitled not to be required to defend in state court the precise claim which it successfully defended in federal court. Likewise, Chrysler states the joinder by the defendant of the plaintiffs herein, Chrysler, as additional defendants in the Cambria County action is a direct interference with the full force and effect of the judgments of this Court in that it is an attempt to again litigate the identical issues previously decided in the United States District Court for the Western District of Pennsylvania. Jones says (p. 5, Defendant's Brief):

"[n]evertheless, only a single item was resolved [in the federal actions] and that was the condition of the car as not being defective or unreasonably dangerous at the time it came into the hands of the plaintiff Theodore Joseph.

No jury has answered the question of whether the car at any time between the dates of its delivery to Theodore Joseph and the accident on January 27, 1972, became defective or unreasonably dangerous, and, if it did, whether any of the named defendants are legally responsible for such defective and unreasonably dangerous condition."

It is noted that the claim against Jones in the state court action was commenced prior to trial of the consolidated federal actions. The claim against Jones in the state court action is for the same personal injuries which formed the basis of the federal action. In its complaint to join General Mo-

tors and Chrysler as additional defendants in the state court action, Jones averred, precisely as it had done before, the sole liability of the manufacturer and retailer. Here again, Jones alleged defectiveness of the power steering component, a question which had been fully adjudicated in favor of General Motors and Chrysler and was embodied in the final judgment of this Court.

Under 28 U.S.C. § 2283 (1965):

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The United States Supreme Court in *Toucey v. New York Life Insurance Co.*, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941) had held that a federal court had no power to stay proceedings in a state court simply because the claim in controversy had previously been adjudicated in the federal court. *See Jennings v. Boenning & Co.*, 482 F.2d 1128, 1133, n. 2 (3d Cir. 1973). The Congressional response to *Toucey* was to amend the Anti-Injunction Act to specifically include the words "to protect or effectuate its judgments". *See* Revisor's Notes to 28 U.S.C. § 2283. Thus, the amendment to the Anti-Injunction Act reasserted the authority of the federal courts to restrain redundant state court litigation of claims embodied in final federal court judgments.

*See generally* J. Moore's *Federal Practice* ¶ 0.208[3.–3] (1959) which points out that the third exception to § 2283:

". . . overrules the holding of the *Toucey* case and adopts the theory of the 'relitigation' cases, which *Toucey* had rejected. In other words where a federal court has adjudicated a matter, this court, in the exercise of equitable discretion, can protect or effectuate its judgment, whether *in personam* or *in rem*, by enjoining, at the instance of the prevailing party, relitigation of the matter. The party prevailing in the federal court is not necessarily obliged to plead his federal judgment in the state court action and,

if eventually unsuccessful, seek Supreme Court review of the adverse state judgment.

*See also* C. Wright, Law of Federal Courts, 180 2d ed. (1970). Informed public policies require that the judgment of this Court and federal actions be accorded stability and certainty, and these same policies underlie the third exception to Section 2283 of the Judicial Code and operate to save a successful litigant from being subjected to a vexatious court litigation through collateral attacks on matters previously determined in the federal courts.

Preliminarily, Jones argues that plaintiff cannot possibly prevail on the merits and that irreparable harm cannot be shown.

■ We approach the entire problem before us with the greatest reluctance, fully realizing that we are not an appellate court from state court proceedings. Furthermore, we are aware the state court is well qualified to protect a litigant through the application of the Doctrine of Res Judicata and Collateral Estoppel. *See Southern California Petroleum Corporation v. Harper*, 273 F.2d 715 (5th Cir. 1960). But in the instant case there is an apparent unexplained refusal on the part of the state court to recognize the federal judgment or to even permit appellate review of the Chrysler and General Motors contentions. We find most persuasive the test of the applicability of the Doctrine of Res Judicata as typified by *Callery v. Mun. Auth. of Township of Blythe*, 432 Pa. 307, 243 A.2d 385 (1968) in requiring the concurrence of four conditions: (1) identity of the thing sued upon, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity of the quality or capacity of the parties suing or sued. As to the identity of the cause of action as set forth in *Kuisis v. Baldwin-Lima-Hamilton Corporation*, 457 Pa. 321, 319 A.2d 914 (1974) at 918:

"If in negligence actions 'we have defined "cause of action" as "the negligent act or acts which occasioned the injury" ', *Saracina v. Cotoia*, 417 Pa. 80, 85, 208 A.2d 764, 767 (1965), under Section 402A, it is

*the defect itself* which constitutes the cause of action. Thus, it is of no moment that theories of negligence and strict liability may be subject to different defenses and require different measures of proof." [Emphasis in original, footnotes omitted.]

As stated in *Donelon v. New Orleans Terminal Company*, 474 F.2d 1108 (5th Cir. 1973) at 1114:

" . . . a federal court may enjoin a state proceeding that is precluded under the doctrine of *res judicata*. While § 2283 was designed to insure the state courts' adjudicative potency, its exceptions assure that the federal courts and their judgments will not be eunuchized and that their muscularity will not be atrophied."

*Accord, Teas v. Twentieth Century-Fox Film Corporation*, 413 F.2d 1263, 1267 (5th Cir. 1969); *Lee v. Terminal Transport Co.*, 282 F.2d 805 (7th Cir. 1960).

■ It seems to the Court that failure to restrain the state court action in this proceeding would result in irreparable harm and unnecessarily debase the judgment entered in the federal action. Refusal to afford federal injunctive relief in this situation would only be a cause for alarm that the battle was to be fought over again. We do not think that the halls of justice should be used for this purpose.

At this point, Jones called the Court's attention to the fact that the plaintiffs chose not to proceed on any breach of warranty or negligence, and "more importantly, [to] the fact that the jury did not rule on those theories" which they allege cannot prejudice Jones in the case at bar (as was argued to the Cambria County Court of Common Pleas.) But this is a much too narrow reading of the Doctrine of Res Judicata and one which we believe the state court was not at liberty to adopt.

A preliminary injunction will issue.