**Harry DERNICK, Plaintiff-Appellant,**

v.

**BRALORNE RESOURCES, LIMITED,
Defendant-Appellee.**

No. 79–3877.

United States Court of Appeals,
Fifth Circuit.
Unit A

March 9, 1981.

C. Leland Hamel, William L. Bowers, Jr., Houston, Tex., for plaintiff-appellant.

Sim Lake, Layne E. Kruse, Houston, Tex., for defendant-appellee.

Before AINSWORTH, CHARLES CLARK and WILLIAMS, Circuit Judges.

AINSWORTH, Circuit Judge:

Plaintiff Harry Dernick instituted this Texas diversity action against defendant Bralorne Resources, Ltd. (BRL), for breach of an alleged agreement to pay Dernick a finder's fee in connection with BRL's acqui- sition of Oil Field Machinery and Supply Company (OMSCO). Alternatively, Der- nick seeks recovery in quantum meruit. The district court granted summary judg- ment for BRL. We reverse and remand.

### I.

Viewing the entire record in the light most favorable to Dernick, *Poller v. Colum- bia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Solomon v. Houston Corrugated Box Co.*, 526 F.2d 389 (5th Cir. 1976); *see* Fed.R. Civ.P. 56(c), the following facts were estab- lished. Dernick, a citizen of Texas, worked for BRL, a Canadian corporation, as vice- president in charge of its Oil and Gas Divi- sion from 1971 to 1974. Before, and at various times after Dernick left BRL, Wil- liam Fitzpatrick, president of BRL, had con- versations with Dernick in which Fitzpat- rick asked Dernick to represent BRL in the United States. Dernick was to assist BRL in acquiring American companies compati- ble with BRL's Canadian operations. Act- ing in this representative capacity, Dernick introduced the principals of OMSCO to Fitzpatrick and BRL. For his services, BRL agreed to pay Dernick a 3% finder's fee.

BRL ultimately funded the purchase of OMSCO in July of 1975 by transferring $5,000,000 to its wholly-owned subsidiary Bralorne International, Inc. (BII), a Dela- ware corporation with its principal place of business in Houston, Texas. BII used that money to purchase OMSCO, taking title in its own name.

Although title to OMSCO is in BII's name, the assets and liabilities of OMSCO have appeared on the consolidated financial statements of BRL since the year of the purchase. In its annual report for 1975, BRL stated, "At midyear the Company ac- quired 100 percent of OMSCO Industries, Inc. of Houston." (Fitzpatrick Ex. 7 at 2) Elsewhere, the 1975 Annual Report distin- guishes between "the Company" and its wholly-owned subsidiaries, including BII:

Notes to 1975 Consolidated Financial Statements

1. Accounting policies:

(a) Principles of consolidation—

The consolidated financial statements include the accounts of the Company and its wholly-owned subsidiaries: Engineered Oil Controls, Ltd., Bralorne International Inc., OMSCO Industries, Inc. . . . .

*Id.* at 16. Finally, the Report states, "*OMSCO Industries, Inc.* This Houston-based oilfield equipment manufacturer was acquired by Bralorne in mid-1975 . . . ." *Id.* at 6. From the context it is apparent the Report intends "Bralorne" to mean BRL, not BII.

BRL completely controls BII. The management of BII is exactly the same as the management of BRL. (Fitzpatrick Dep. at 37) Mr. Fitzpatrick is the president of both corporations. The directors of BRL determine the policies for BII, and indeed, the BRL directors specifically discussed the acquisition of OMSCO in May of 1975. BII, as Fitzpatrick characterizes it, is the "vehicle through which Bralorne Resources carries out its activities in the United States." *Id.*

Dernick claims that BRL's purchase of OMSCO through BII for $5,000,000 entitles him to a finder's fee of $150,000. However, the district court determined that BII was an indispensable party to the suit under Fed.R.Civ.P. 19(b),[1] and since BII's joinder would destroy complete diversity among the parties, see *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), the district judge granted summary judgment in favor of BRL dismissing the suit.

II.

Appellee's brief and the district court's opinion focus on the issue of piercing BII's corporate veil to hold its parent, BRL, liable for BII's obligation. Dernick raises a veil-piercing claim as an alternative ground for recovery, but his main contention is that BRL is liable to him directly for breach of its promise. Dernick does not seek to hold BRL liable for the acts of its subsidiary, nor does he seek to hold directors of either corporation personally liable—traditional veil-piercing claims. Rather, Dernick is suing BRL for damages occasioned by BRL's own acts.

In light of the district court's application of insufficient legal analysis to resolve the case, we substitute our own judgment on the law before us and reach a different conclusion. See *Horn v. C. L. Osborn Contracting Co.*, 591 F.2d 318, 320 (5th Cir. 1979); *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 384 (5th Cir. 1977).

---

1. Rule 19(a) & (b) provides:

(a) **Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) **Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

### III.

■ The cases on which BRL relies to maintain that BII is an indispensable party do not withstand close review. For the most part, they involve situations where the subsidiary was the primary participant in the events giving rise to the lawsuit. Failure to join the subsidiary in such circumstances would be improper. In the instant case, however, the parent, BRL, is the principal actor.

The only case cited by BRL which is arguably similar to the one presented here is *Lang v. Colonial Pipeline Co.*, 266 F.Supp. 552 (E.D.Pa.), aff'd, 383 F.2d 986 (3d Cir. 1967). In *Lang*, the court dismissed the suit for failure to join Colonial Pipeline's subsidiary which held title to an easement granted to, and improved by, the parent. The court found that the subsidiary would be adversely affected if not joined in the action for ejectment, reasoning that to extinguish the parent's easement would make the easement worthless to the subsidiary. 266 F.Supp. at 554; *see Doty v. St. Mary Parish Land Co.*, 598 F.2d 885, 887 (5th Cir. 1979). However, in the instant case, Dernick merely seeks monetary damages; BII's title to OMSCO will not be affected.

■ Our recent decision, *Gertner v. Hospital Affiliates International, Inc.*, 602 F.2d 685 (5th Cir. 1979), is dispositive of the issues in this case. Based on Gertner's allegations, Hospital Associates International (HAI) and Gertner had numerous informal business dealings over several years, one of which involved an oral agreement for the joint purchase and management of Shoal Creek Hospital. In violation of that agreement, HAI purchased Shoal Creek independently through Hospital Affiliates of Austin, Inc. (HAA), a wholly-owned subsidiary. Gertner sued HAI in federal court for breach of contract. Joinder of HAA would have destroyed diversity jurisdiction. To assure himself of an adequate remedy elsewhere, Gertner also brought a state court action against HAI and HAA. We found that HAA was not an indispensable party to the federal suit. Although Gertner sought imposition of a constructive trust on the assets of Shoal Creek Hospital, property technically owned by HAA, we found proper shaping of relief could avoid prejudice to HAA. Applying the analysis of Rule 19 that we used in *Gertner*, we hold that BII is not an indispensable party to Dernick's federal suit.

Since BII's joinder is not feasible, we use the four tests set out in Fed.R.Civ.P. 19(b) to decide whether or not dismissal is required. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); *Gertner v. Hospital Affiliates International, Inc.*, 602 F.2d at 688. First, a judgment against BRL allowing Dernick to recover on his contract would have no effect on BII. As Dernick's counsel stipulated at oral argument and in their Reply Brief, p. 6, recovery in federal court would effectively moot the state court proceedings; Dernick could not recover a second time against BII. Denial of recovery to Dernick in the federal court action would be res judicata as to BRL in the state proceeding and would have no effect as to BII. BRL could not possibly be subject to multiple lawsuits and BII's rights could not be affected in its absence. BRL claims to see something unusual in Dernick's state court action against it *and* BII. The simple explanation is that BRL was included in the state suit in the event we dismissed Dernick's action here without reaching the merits. Dernick does not seek and cannot have "two bites at the apple."

Second, we need not consider how relief may be fashioned to avoid prejudice. There will be no prejudice. The third and fourth elements to consider in determining whether a party is indispensable involve questions of judicial efficiency. The legal system's interest in deciding controversies in a single action is no doubt substantial. In their present posture, Dernick's lawsuits may require two adjudications—a federal action against BRL and a state action against BII—to be completely resolved. In addition, Dernick will have an adequate remedy in state court where both BRL and BII are presently joined. However, against this in-

terest in judicial economy, we have the explicit provisions of 28 U.S.C. § 1332 which allow federal suits based on diversity of citizenship. For good or ill, Congress has not yet seen fit to relegate essentially state law actions exclusively to state courts. We decline to usurp Congress' legislative authority. Based on our own precedent and our understanding of diversity jurisdiction, we hold that BII is not an indispensable party, and we remand this case for trial.

REVERSED AND REMANDED.